UNITED STATES DISTRICT COURT        SOUTHERN DISTRICT OF TEXAS
United States District Court
Southern District of Texas
**ENTERED**
December 28, 2017
David J. Bradley, Clerk

Glassell Non-Operated Interests, §
Ltd., et al., §
§
    Plaintiffs, §
§
versus § Civil Action H-16-1573
§
Enerquest Oil & Gas, L.L.C., §
§
    Defendant. §

## Opinion on Summary Judgment

1.  *Introduction.*

A group of oil businesses agreed to develop prospects in an area cooperatively and to offer to share newly acquired interests in the area among themselves. One company acquired another's interests in the area but did not offer a share to the other participants. They sued, claiming that the acquirer had breached the agreement. The acquirer said that it did not breach the agreement and, even if it had, the agreement was not enforceable. The excluded parties will prevail.

2.  *Facts.*

On September 9, 2011, these companies and people agreed to develop an area of mutual interest in the Dubose Field in the counties of DeWitt, Gonzales, and Karnes, Texas:

   A.   Enerquest Oil & Gas, L.L.C.,
   B.   Yates Energy Corporation,
   C.   Jalapeño Corporation,
   D.   Curry Glassell,
   E.   The Alfred C. Glassell, III, 1957 Trust, now ACG3 Mineral Interests, Ltd., and
   F.   Glassell Non-Operated Interests, Ltd.

In October of 2011, they amended the development agreement to include:
A.  DKE Dyersdale, Inc.,
B.  Cathy Dohnalek,
C.  Walter Mengden, Jr.,
D.  Walter Mengden, III,
E.  Joseph Mengden,
F.  Carl Mengden,
G.  Susan Mengden,
H.  Michael Mengden, and
I.  Pati-Dubose, Inc.

The participants agreed to offer each other a share of royalties, minerals, or other rights in a 40-square-mile tract acquired after the date of accession. Participants did not have to share what they already owned.

Interests that Glassell Non-Operated might acquire from Clare A. or Alfred C. Glassell's estates did not have to be offered to the others.

If Yates or Jalapeño acquired each other's interests, neither had to offer them to the others.

In 2016, Enerquest acquired interests from DKE Dyersdale and Pati-Dubose. It says that because DKE Dyersdale and Pati-Dubose had these interests before the agreement's effective date, they are forever exempt from the offer to share so long as they are transferred among parties to the development agreement.

Glassell Non-Operated says that the agreement exempts only what a participant already had plus the two particular sets of transfers – between Yates and Jalapeño and from Clare and Alfred to Glassell Non-Operated.

3.  *Agreement.*

The September 2011 development agreement describes the area of mutual interest in ¶2.1. It says that it includes interests acquired within the area after August 1, 2010. That paragraph excludes from the area interests that Clare or Alfred Glassell might transfer to Glassell Non-Operated.

Paragraph 2.13 explains that transfers between Jalapeño and Yates need not be offered to the others, "notwithstanding any other provision" of the agreement.

Paragraph 2.3 says that the interests a participant already owns are not subject to sharing if they were owned at the inception. After August 1, 2010, when a participant acquires a new interest, it must tell the others and offer them a share.

The Clare and Alfred transfers are included in the paragraph defining the area of mutual interest. Also, it is the transfers, not the original ownership, that are excluded.

Similarly, the paragraph exempting the transfers between Jalapeño and Yates describes that act of transfer and emphasizes that these are to be excluded independent of other parts of the contract.

On the other hand, ¶2.3 excludes what a party owns already. It does not mention transfer, nor does it say that the other provisions of the contract do not apply. This says that a participant does not have to offer to the others what it had when it signed the agreement, even if it is located in the area of mutual interest and was acquired after the date of the original agreement. It does not suggest that later transfer to another participant would be excluded from the agreement's sharing provisions.

4. *Statute of Frauds.*

To avoid the statute of frauds, an agreement must identify in writing the land so that someone familiar with the area could place it with reasonable certainty.[1] Here, the development agreement identifies the 40-square-mile tract in the Seitel Agreement and its map as well as the surrounding one-half-mile halo in the COP-Seitel-Yates Agreement.

---

[1] *See Westland Oil Development Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903 (Tex. 1982); *Morrison v. Dailey*, 6 S.W. 426 (Tex. 1887); *Anderson Energy Corp. v. Dominion Oklahoma Texas Exploration & Production, Inc.*, 469 S.W.3d 280 (Tex. App.–San Antonio 2015, no pet.).

The Seitel Agreement describes 40.26 square miles located in DeWitt, Gonzales, and Karnes counties. A plat is attached. It identifies the three counties and is plotted on the Texas State Coordinate System. The coordinates are labeled on the map. An outlined and shaded area includes the labels "new acquisition: 24.10 sq miles" and "license area: 16.16 sq miles," although the precise eastern and southern borders are not shown. The map was made from mapping data of Seitel Data, Ltd., which has been accessible to and used in practice by all parties.

Halo is an industry term that, logically, means an area around the property. As described, it is one-half of a mile wide and adjacent to the outer boundary of the land described in the Seitel Agreement.

Maxey Sheppard, Enerquest's surveyor, said that the agreements and the map did not sufficiently identify the land. His report was inadequately precise. He cannot merely look at it and feign incomprehension.

Nedra Foster is the surveyor of Glassell Non-Operated, ACG3, and Yates. She has worked in the area. Using the map from the Seitel agreement, the mapping data used to create that map, and the description of the halo from the COP-Seitel-Yates agreement, she identified the land.

5.  *Partial Performance.*

Even if the area of mutual interest were not identified with reasonable certainty, partial performance would exempt this agreement from being void under the statute of frauds.[2]

Enerquest sent an email to the other participants, telling them that it planned to acquire the Pati-Dubose and DKE Dyersdale interests and would share. It now insists that, on further consideration, it thinks that they are not covered by the sharing obligation.

At the same time as Enerquest was trying to acquire the Pati-Dubose and DKE Dyersdale interests, Yates was, too. Yates stopped trying to acquire the interests, and Enerquest bought them. Only after title passed did Enerquest tell

---

[2]*See Riggles v. Erney*, 154 U.S. 244, 254 (1894); *Exxon Corp. v. Breezevale, Ltd.*, 82 S.W. 3d 429 (Tex. App.–Dallas 2002, pet. denied).

the others that it would not offer to share because it did not believe that the interests fell under the sharing obligation.

Yates had relied on Enerquest's saying that it would offer shares to the participants in the development agreement and, in reasonable reliance on the agreement and Enerquest's representation, withdrew from its independent bidding. Enerquest paid less than it would have had it been competing with Yates and the others.

Had the others known from the start that Enerquest had no intention of sharing, they might have bid independently, too. Like Yates, they reasonably relied on Enerquest to follow the agreement and its own plan to share.

6. *Conclusion.*

The development agreement is fully enforceable. Enerquest Oil & Gas was obliged to share the interests that it acquired from Pati-Dubose and DKE Dyersdale.

The court will now take up the issue of remedies.

Signed on December 28, 2017, at Houston, Texas.

Lynn N. Hughes
United States District Judge